IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID LOUGHNANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 0086 |
| v. ) | |
| ) | Judge John Z. Lee |
| ZUKOWSKI, ROGERS, FLOOD & ) | |
| McARDLE; KELLY A. CAHILL; ) | |
| MARTIN DAVIS; RYAN P. FARRELL; ) | |
| RICHARD G. FLOOD; DAVID W. ) | |
| McARDLE; E. REGAN DANIELS ) | |
| SHEPLEY; MICHAEL J. SMORON; ) | |
| HINSHAW & CULBERTSON, LLP; ) | |
| MATTHEW R. HENDERSON; TOM H. ) | |
| LUETKEMEYER; THOMAS ) | |
| O'CARROLL; CSI TECHNICAL ) | |
| SERVICES, INC.; and D4, LLC; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Loughnane brought this lawsuit against Defendants Zukowski, Rogers, Flood & McArdle; Kelly A. Cahill; Martin Davis; Ryan P. Farrell; Richard G. Flood; David W. McArdle; E. Regan Daniels Shepley; and Michael J. Smoron (collectively, "the Zukowski Defendants"); Hinshaw & Culbertson, LLP; Matthew R. Henderson; Tom H. Luetkemeyer; and Thomas O'Carroll (collectively, "the Hinshaw Defendants"); CSI Technical Services, Inc. ("CSI");[1] and D4, LLC ("D4"). Plaintiff alleges that Defendants have violated the Stored Communications Act ("SCA"), 18

---

[1] Previously, Plaintiff voluntarily dismissed his claims against CSI. *See* Notice of Voluntary Dismissal, ECF No. 39. In his amended complaint, however, he again names CSI as a Defendant. *See* Am. Compl. at 1, 3, ECF No. 68. CSI has neither appeared in this case nor filed a motion to dismiss.

U.S.C. § 2701. He also brings an Illinois state-law claim for intrusion upon seclusion. Currently pending before the Court are three motions to dismiss: one filed by the Zukowski Defendants, one filed by the Hinshaw Defendants, and one filed by D4.[2] For the reasons stated below, the motions are denied.

## Background[3]

### I. Loughnane's Employment at ZRFM

Loughnane is an attorney who was employed at the firm of Zukowski, Rogers, Flood & McArdle ("ZRFM") from December 1, 2011 to January 9, 2017. Am. Compl. ¶ 29, ECF No. 68. As part of his employment at ZRFM, Loughnane was issued a cell phone. *Id.* ¶ 30. Although ZRFM paid for the phone, Loughnane alleges that ZRFM treated it as his personal phone, rather than one belonging to the firm. *Id.* ¶¶ 31, 35–39, 46, 50. For instance, when Loughnane needed to replace the phone, he went to the AT&T store personally, selected a replacement, and donated the old phone to charity. *Id.* ¶ 38.

Loughnane states that ZRFM personnel "set up" the phone "so it would connect to and operate with ZRFM's office computer system including email, the internet, [Loughnane's] personal Gmail email account[,] and [Loughnane's] personal home computer." *Id.* ¶ 41. But, he alleges, the firm had no policy pertaining to employees'

---

[2] The Hinshaw Defendants' and the Zukowski Defendants' motions were filed prior to the filing of Loughnane's amended complaint. The parties agree, however, that the motions apply with equal force to the amended complaint. *See* ECF No. 75; ECF No. 76.

[3] The following facts are taken from the amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

2

use of the phones, nor did it have a policy explaining ZRFM's right or authority to access information contained in the email accounts, phones, or computers of its employees. *Id.* ¶¶ 42–45. Furthermore, in addition to work email, Loughnane maintained a personal Gmail account on his phone. *Id.* ¶¶ 50–52.

## II. Access by the Zukowski Defendants

Loughnane states that, despite having no authorization to do so, the Zukowski Defendants "accessed, searched, remotely intercepted[,] and monitored emails" on both the firm's email network and Loughnane's Gmail account. *Id.* ¶¶ 52–53. Specifically, Loughnane alleges that on January 9, 2017, Davis "surreptitiously" entered Loughnane's office and took his cell phone, at the direction of Cahill, Farrell, Flood, McArdle, Shepley, and/or Smoron. *Id.* ¶¶ 10, 54–55. And, although none of the Zukowski Defendants had his permission to access the materials on his phone, *id.* ¶¶ 56–59, the Zukowski Defendants acquired his phone; accessed personal, private, and confidential materials on the phone; and copied, stored, and distributed its contents. *Id.* ¶¶ 61–64.

## III. Access by CSI

Loughnane further alleges that the Zukowski Defendants then gave CSI access to the phone and its contents on January 9, 2017. *Id.* ¶¶ 69, 73. According to Loughnane, CSI failed to obtain his authorization and consent before accessing the phone. *Id.* ¶¶ 70–72.

3

**III.     Access by the Hinshaw Defendants**

In addition, Loughnane states, one or more of the Zukowski Defendants gave the Hinshaw Defendants access to the phone and its contents on or before January 12, 2017. *Id.* ¶ 75. Again, Loughnane alleges that the Hinshaw Defendants failed to obtain his authorization and consent before accessing the contents of the phone. *Id.* ¶¶ 76–78. According to Loughnane, the Hinshaw Defendants continue to possess, access, and use personal information obtained from the phone. *Id.* ¶ 79.

**IV.     Access by D4**

Finally, Loughnane states that on January 12, 2017, one or more of the Hinshaw Defendants and/or one or more of the Zukowski Defendants gave D4 access to the phone and its contents. *Id.* ¶ 81. Again, Loughnane alleges that D4 failed to obtain his authorization and consent before accessing the phone. *Id.* ¶¶ 82–84. Instead, according to Loughnane, D4 "hacked into" the phone and copied and stored 243 calendar entries, 506 call logs, 997 contacts, 3,402 emails, 317 MMS messages, 1,369 SMS messages, and 336 data files. *Id.* ¶¶ 85–86.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual

4

allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I.  SCA Claim (Count I)

The Zukowski Defendants, Hinshaw Defendants, and D4 all seek dismissal of Loughnane's SCA claim. The SCA prohibits:

> (1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or
>
> (2) intentionally exceed[ing] an authorization to access that facility;
>
> and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system[.]

18 U.S.C. § 2701(a).

#### A.  Whether the Cell Phone is a Facility

Defendants first argue that the phone at issue is not a "facility" for purposes of the SCA. Defendants assert that "[a] relevant 'facility' for purposes of the SCA includes the facilities that are *operated by* electronic communication service providers," while cell phones are "beyond the purview of the SCA as they simply enable [the use of] [electronic communication services]." Zukowski Defs.' Mot.

5

Dismiss at 6–7, ECF No. 44. Indeed, while the Seventh Circuit has not yet decided this issue, other courts have concluded that a personal electronic device is not a "facility" covered by the SCA. *See, e.g., Garcia v. City of Laredo, Tx.*, 702 F.3d 788, 792 (5th Cir. 2012) (stating that "facility" does not include "computers that *enable* the use of an electronic communication service," but rather, is limited to "facilities that are *operated by* electronic communication service providers") (emphasis in original); *Shefts v. Patrakis*, No. 10-cv-1104, 2013 WL 489610, at *4 (C.D. Ill. Feb. 8, 2013) (finding that a Blackberry was not a "facility" for purposes of an SCA claim); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057–58 (N.D. Cal. 2012) (concluding that a laptop, computer, or mobile device does not constitute a "facility" for purposes of the SCA).

That said, it is not clear from Loughnane's complaint that the "facility" he alleges Defendants accessed is his physical cell phone. On the contrary, Loughnane alleges that Defendants "intentionally accessed *e-mail servers* where [Loughnane's] emails are archived and stored," presumably using the phone to access those servers. Am. Compl. ¶ 91 (emphasis added). And as Loughnane points out, courts have acknowledged that an email server can constitute a facility for purposes of the SCA. *See, e.g., Int'l Bhd. of Elec. Workers, Local 134 v. Cunningham*, No. 12 C 7487, 2013 WL 1828932, at *4 (N.D. Ill. Apr. 29, 2013) (concluding that, while "simply accessing a personal computer to obtain stored data would not run afoul of § 2701," "networks and servers can provide an electronic communication service" and thus qualify as facilities under the SCA). Of course, discovery may show that the email-servers at

6

issue belonged to ZRFM (in which case its access presumably would have been authorized) or that Defendants did not access an e-mail server at all, but at this early stage of the proceedings, Loughnane's allegations must be taken as true and he receives the benefit of all reasonable inferences from them. Thus, dismissal of his SCA claim is premature.

This conclusion holds true despite D4's contention that the "Extraction Report" it authored—which is attached to Loughnane's amended complaint—"establishe[s] that the only data accessed by D4 was solely the data stored on the Phone." D4's Reply Supp. Mot. Dismiss at 2–3, ECF No. 89. But that report merely states: "Selected Manufacturer: Samsung GSM" and "Selected Device Name: SM-N900A Galaxy Note 3." Am. Compl., Ex. B ("Extraction Report"), ECF No. 68-2. The Court cannot conclude from this document alone that the SCA claim should be dismissed as a matter of law.

### B. Whether the Information was in "Electronic Storage"

Defendants also contend that the information they allegedly accessed was not in "electronic storage" within the meaning of the SCA. The SCA defines "electronic storage as: "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). According to Defendants, Loughnane has not alleged that the information at issue falls within either category.

7

This Court rejected essentially the same argument in *Owen v. Cigna*, 188 F. Supp. 3d 790 (N.D. Ill. 2016), where the defendants sought dismissal of the plaintiff's SCA claim because the allegations of her complaint failed to track one of the definitions of electronic storage as provided in the statute:

> [T]he Court finds persuasive cases such as *Pascal Pour Elle, Ltd. v. Jin*, 75 F. Supp. 3d 782 (N.D. Ill. 2014), and *Kaufman v. Nest Seekers, LLC*, No. 05 CV 6782, 2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006), which explicitly reject the idea that a plaintiff, to state an SCA claim, must specify that a stored electronic communication was in "temporary, intermediate storage" or was stored "for purposes of backup protection." *See Pascal*, 75 F. Supp. 3d at 788–90 (SCA was adequately pled despite that plaintiff had "not alleged that the data was being stored temporarily, incidental to its transmission, or that it was stored as backup"); *Kaufman*, 2006 WL 2807177, at *7 (simple allegations that electronic communications were stored on a particular server were "sufficient to make out the element of 'electronic storage'"). As the *Pascal* court explained, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and whether the communications at issue in an SCA claim were "stored for back-up purposes [is] more appropriately left for summary judgment or trial." 75 F. Supp. 3d 782, 788–90 (N.D. Ill. 2014); *see also Joseph v. Carnes*, 108 F. Supp. 3d 613, 618 (N.D. Ill. 2015) (holding that emails archived in a database were in "electronic storage" as defined in 18 U.S.C. § 2510(17)(B)).

*Id.* at 795.

The Zukowski Defendants attempt to distinguish *Owen* by arguing that Loughnane "has not alleged that [they] accessed data stored on any database or server," while the plaintiff in *Owen* alleged that her emails were "stored on a server at att.net." Zukowski Defs.' Reply Supp Mot. Dismiss at 5, ECF No. 63 (citing *Owen*, 188 F. Supp. 3d at 794). But, as discussed, Loughnane does allege that Defendants used his phone to access emails archived and stored on servers. Am. Compl. ¶ 91.

8

Thus, the Court will not dismiss Loughnane's SCA claim for failure to sufficiently allege that the information at issue was in electronic storage.

### C. Allegations of Access and "Group Pleading"

In addition to the above arguments, the Hinshaw Defendants contend that Loughnane "has not alleged that any of them accessed his phone." Hinshaw Defs.' Mem. Supp. Mot. Dismiss at 7, ECF No. 33. Similarly, D4 alleges that Loughnane has engaged in "shot-gun" group pleading that fails to "delineate the specific alleged wrongful conduct of each defendant." D4's Mot. Dismiss at 5, ECF No. 83.

As to the Hinshaw Defendants, the Court concludes that Loughnane's allegations support a reasonable inference that they accessed email servers on which his communications were archived and stored. Although Loughnane has not made specific factual allegations as to how the Hinshaw Defendants accessed these materials, he is not required to do so at the pleading stage.

Rule 8 does not require a plaintiff to plead specific facts; rather, it requires only that a plaintiff "put the defendants on notice of why they are being sued." *Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016). Here, Loughnane states that the Zukowski Defendants gave the Hinshaw Defendants the phone "and/or [its] contents," and that subsequently, the Hinshaw Defendants possessed, accessed, and used information obtained therefrom. Am. Compl. ¶¶ 75–78. This adequately alleges that the Hinshaw Defendants obtained information by using his phone to access servers containing Loughnane's emails.

9

Accordingly, Loughnane's allegations are sufficient to put the Hinshaw Defendants on notice of his SCA claim.

D4's related argument concerning "group pleading" also fails. D4 seeks dismissal of the SCA claim because Loughnane "alleges multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions[.]" D4's Mot. Dismiss at 6. But Loughnane's complaint separately alleges that each Defendant or group of Defendants accessed his emails, *see* Am. Compl. ¶¶ 53–87, and specifically that D4 received the phone from the Hinshaw Defendants or the Zukowski Defendants and "hacked" into it to access Loughnane's communications. *Id.* ¶¶ 81–87. To the extent D4's argument is based on its position that the extraction report establishes that it did not access any servers, this is unpersuasive.

In sum, Defendants' motions to dismiss Loughnane's SCA claim are denied.

## II. Intrusion-Upon-Seclusion Claim (Count II)

In Count II, Loughnane alleges that Defendants intruded into his seclusion when they accessed the communications and other information on the phone and in his email accounts. The Hinshaw Defendants and the Zukowski Defendants argue that Loughnane's claim is barred by the litigation privilege. In addition, the Zukowski Defendants and D4 contend that Loughnane has failed to adequately plead the elements of the claim.

10

### A. Litigation Privilege

The parties' arguments concerning the applicability of the litigation privilege center on a state-court case, *Kimberly A. Popovich v. Zukowski, Rogers, Flood, & McArdle, et al.*, No. 15-LA-78 ("the Popovich Matter"), which is currently pending in McHenry County, Illinois. The parties dispute whether the Court should take judicial notice of the Popovich Matter. Accordingly, the Court will first address judicial notice before determining whether the litigation privilege applies.

#### 1. Judicial Notice

The Zukowski Defendants and the Hinshaw Defendants ask the Court to take judicial notice of the Popovich Matter, arguing that it is related to this case and provides important context for Loughnane's claims. Loughnane disputes that judicial notice of a state-court case is proper on a motion to dismiss and argues that the Popovich Matter has no relevance to the issues presented by this case.

A court may take judicial notice of matters of public record on a motion to dismiss without converting it to a motion for summary judgment. *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996). This includes state or federal court documents where those proceedings "have a direct relation to matters at issue." *Opoka v. Immigration & Naturalization Serv.*, 94 F.3d 392, 394 (7th Cir. 1996).

According to the Hinshaw and Zukowski Defendants, the alleged intrusion into Loughnane's seclusion appears to have occurred during the course of discovery in the Popovich Matter, where the Hinshaw Defendants were representing ZFRM. Thus, to analyze whether the litigation privilege would apply to the purported intrusion, it is

11

necessary for the Court to refer to that litigation. Accordingly, the Court will take judicial notice of the existence of the Popovich Matter and the fact that the Hinshaw Defendants obtained a protective order in that case. *See* Zukowski Defs.' Mot. Dismiss, Ex. B ("Motion for Protective Order"), ECF No. 44-2; *Id.*, Ex. C ("Protective Order"), ECF No. 44-3. The Court will not assume the truth of matters asserted in the documents provided from the Popovich Matter. *See Opoka*, 94 F.3d at 395 (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (quotations and citations omitted)).

### 2. Applicability of the Privilege

Both the Zukowski Defendants and the Hinshaw Defendants argue that Loughnane's intrusion-upon-seclusion claim is barred by the absolute litigation privilege. Under Illinois law—which the parties agree applies here—attorneys and private litigants enjoy an absolute privilege for defamatory statements made in the course of litigation. *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 57 (Ill. App. Ct. 2014). The privilege "extend[s] beyond communications to include conduct performed within the practice of law, since attorneys typically do things—actions—in addition to communications in order to secure justice for their clients." *Scarpelli v. McDermott Will & Emery LLP*, 117 N.E.3d 238, 245–46 (Ill. App. Ct. 2018). And, it "has been extended to apply . . . to many types of causes of action," including allegations of

12

intentional or negligent infliction of emotional distress, breach of contract, invasion of privacy, and—as is relevant here—intrusion upon seclusion. *Id.* at 244, 246–47.

Loughnane contends that the privilege does not apply in this case because "Illinois courts have never extended the litigation privilege to this scenario where the Plaintiff in this case was not a party to the underlying lawsuit." Pl.'s Resp. Opp. Hinshaw Defs.' Mot. Dismiss at 10, ECF No. 50. But whether Loughnane was a party to the Popovich Matter is not the dispositive issue, because Illinois courts have made clear that the "*only* linchpin" of the privilege is whether the communication or conduct at issue was "relate[d] to proposed or pending litigation." *Scarpelli*, 117 N.E.2d at 247 (emphasis added); *see also August v. Hanlon*, 975 N.E.2d 1234, 1248 (Ill. App. Ct. 2012) (stating that "Illinois courts have expressly declined to extend the attorney-litigation privilege to third parties *not connected with the litigation*") (emphasis added); *Kurczaba v. Pollock*, 742 N.E.2d 425, 440 (Ill. App. Ct. 2000) ("Illinois clearly limits the attorney litigation privilege and has refused to extend it to third-party communications *unrelated to a lawsuit*.") (emphasis added); *Black v. Wrigley*, No. 17 C 101, 2017 WL 8186996, at *5 (N.D. Ill. Dec. 8, 2017) (finding that litigation privilege did not apply to "communications between participants in litigation and an *unrelated* third party") (emphasis added).

The Court cannot conclude from Loughnane's allegations and the limited information from the Popovitch Matter that the actions Defendants allegedly took were sufficiently "related" to that lawsuit to trigger the litigation privilege. Although Defendants provide a copy of the protective order entered in the Popovich Matter,

13

which specifically refers to electronic communications with Loughnane, that order was not entered until approximately a month after the events described in the complaint are alleged to have taken place. Accordingly, the Court declines to dismiss Loughnane's intrusion-upon-seclusion claim based upon the litigation privilege.

### B. Failure to State a Claim

The Zukowski Defendants and D4 also argue that Loughnane's allegations fail to state a claim for intrusion upon seclusion. To make out a claim for intrusion upon seclusion under Illinois law, a plaintiff must allege that: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009) (quoting *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004)).

D4 challenges the third element, stating that "ZRFM provided the Phone to [Loughnane] as part of his employment, to use in furtherance of firm business," and therefore, Loughnane "cannot assert an expectation of privacy in the data on the Phone." D4's Mot. Dismiss at 7. But Loughnane alleges that the phone was treated as his personal phone and that ZRFM had no policy pertaining to any right or authority to inspect or access attorneys' phones. Moreover, Loughnane alleges that the materials on the phone included emails regarding his healthcare, finances, and family. Am. Compl. ¶ 115. This is sufficient to allege that the matters on which Defendants intruded were private. *See Ameristar Casino E. Chi., LLC v. UNITE*

14

*HERE Local 1*, No. 16 C 5379, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) (noting that examples of private facts include sexual relations, embarrassing illnesses, personal letters, domestic or family matters, and mental health conditions); *Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *5 (N.D. Ill. June 11, 2010) (stating that Illinois courts have recognized health issues and sexual relationships as examples of private facts). "Whether the emails are actually private is a matter of fact which cannot be determined at this stage." *Steinbach v. Vill. of Forest Park*, No. 06 C 4215, 2009 WL 2605283, at *4 (N.D. Ill. Aug. 25, 2009).

The Zukowski Defendants challenge the second element of Loughnane's claim, pointing out that his complaint states only that their actions were "offensive," not "*highly* offensive." Zukowski Defs.' Mot. Dismiss at 10; Am. Compl. ¶ 114. In any event, they contend, no reasonable person would find it highly offensive for an employer to "[c]ollect[] and access[]" a departing employee's work-issued phone. *Id.* at 11. But assuming the facts of Loughnane's complaint to be true, the Court concludes that he has plausibly alleged conduct that a reasonable person would find highly offensive, and the failure to include the word "highly" in the complaint is therefore immaterial. When the Illinois Supreme Court recognized the tort of intrusion upon seclusion, it acknowledged that an actionable intrusion could take the form of, among other things, "opening . . . private and personal mail." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 424 (Ill. 2012) (quoting Restatement (Second) of Torts § 652B (1977)). What is alleged here is substantially similar; Loughnane claims that Defendants accessed private and personal emails in his Gmail account. The

15

Court sees no reason to draw a distinction between electronic and non-electronic mail, so Loughnane's claim for intrusion upon seclusion may proceed.

In sum, Defendants' motions to dismiss are denied as to Loughnane's claim for intrusion upon seclusion.

## Conclusion

For the reasons stated herein, the motions to dismiss [32][44][83] are denied.

**IT IS SO ORDERED.**  ENTERED: 9/6/19

_____
**JOHN Z. LEE**
**United States District Judge**