IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID LOUGHNANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 86 |
| v. ) | |
| ) | Judge John Z. Lee |
| ZUKOWSKI, ROGERS, FLOOD & ) | |
| McARDLE; KELLY A. CAHILL; ) | |
| MARTIN DAVIS; RYAN P. FARRELL; ) | |
| RICHARD G. FLOOD; DAVID W. ) | |
| McARDLE; E. REGAN DANIELS ) | |
| SHEPLEY; MICHAEL J. SMORON; ) | |
| HINSHAW & CULBERTSON, LLP; ) | |
| MATTHEW R. HENDERSON; TOM H. ) | |
| LUETKEMEYER; THOMAS L. ) | |
| O'CARROLL; and D4, LLC; ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

David Loughnane was employed as an attorney by Zukowski, Rogers, Flood & McArdle ("ZRFM") from 2011 to 2017. ZRMF paid for Loughnane to have a cell phone, and after terminating his employment, it took the phone back and sent it to D4, LLC ("D4") for extraction and forensic analysis of its internally stored data. In so doing, Loughnane contends that ZRFM; the firm's own counsel, Hinshaw & Culbertson, LLP ("Hinshaw"); numerous employees of each firm; and D4 (collectively, "Defendants") violated the Stored Communications Act and committed intrusion upon seclusion under Illinois law. Before the Court are Defendants' motions for summary judgment. For the following reasons, the ZRFM Defendants and D4's motion is granted, and the Hinshaw Defendants' motion is granted in part and denied in part.

I. **Background**

A. **Facts**[1]

Loughnane is an attorney licensed to practice in Illinois. ZRFM Defs. and D4's L.R. 56.1 Stmt. Material Facts ("DSOF-1") ¶ 4, ECF No. 222. From December 1, 2011 to January 9, 2017, Loughnane was employed as an attorney by ZRFM, an Illinois law firm.[2] *Id.* ¶ 5. ZRFM paid for Loughnane to have a cellular phone ("the Phone") during his employment with the firm; Loughnane selected and obtained the Phone—a Samsung Galaxy Note 3 smartphone—himself, and ZRFM paid the bills associated with it. *See id.* ¶¶ 6, 8; Pl.'s L.R. 56.1 Stmt. Additional Facts ("PSOAF-1") ¶ 28, ECF No. 261; Pl.'s Ex. A, Loughnane Aff. ¶¶ 3, 5, ECF No. 257-2.

Loughnane used the Phone for work and personal purposes alike during his employment with ZRFM, and configured the Phone to connect to his personal Gmail account, though he did not protect either with a password or passcode. *See* PSOAF-1 ¶ 37; Hinshaw Defs.' L.R. 56.1 Stmt. Material Facts ("DSOF-2") ¶¶ 74–75, ECF No. 252. Loughnane's mixed use of the Phone was not only tolerated but encouraged by ZRFM, which had no written policies in place regarding attorneys' use of cellular phones paid for by the firm. PSOAF-1 ¶ 23; Loughnane Aff. ¶¶ 4, 7–8. At the same time, ZFRM regularly required its employees to return their firm-funded cellular phones at the conclusion of their employment. DSOF-2 ¶ 14.

---

[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

[2] Seven Defendants are employees of ZRFM: Kelly A. Cahill, attorney; Martin Davis, employee; Ryan P. Farrell, attorney; Richard G. Flood, partner; David W. McArdle, partner; E. Regan Daniels Shepley, attorney; and Michael J. Smoron, partner. DSOF-1 ¶ 2. Together with ZRFM, the Court refers to them as "the ZRFM Defendants."

ZRFM terminated Loughnane's employment with the firm on January 9, 2017. DSOF-1 ¶ 9. Before delivering the bad news to Loughnane, Defendant Davis entered his office and seized the Phone without Loughnane's knowledge. Pl.'s Resp. ZRFM Defs. and D4's L.R. 56.1 Stmt. Material Facts ("Resp. DSOF-1") ¶ 10, ECF No. 257-1; Pl.'s L.R. 56.1 Stmt. Additional Facts ("PSOAF-2") ¶ 102, ECF No. 263-1. No one from ZRFM examined the Phone or its data while it was in the firm's possession. DSOF-1 ¶ 10. The next day, Defendant Flood delivered the Phone to John Evans, then Senior Vice President of Forensic Service of D4, a company that performs electronic discovery and computer forensic services. *Id.* ¶¶ 3, 11, 14–15.

On January 12, 2017, Evans used a forensic tool called Cellebrite UFED Touch version 5.4.0.853. to extracted and analyze all of the data stored on the Phone's internal memory storage. *Id.* ¶¶ 12, 14–15; ZRFM Defs. and D4's Ex. 3, Evans Aff. ("Evans Aff.") ¶¶ 8, 10, ECF No. 222-3. Before beginning the process, Evans switched the Phone into airplane mode, which disabled its access to the Internet and Internet-based accounts and servers. DSOF-1 ¶ 13; Evans Aff. ¶ 9. While the Phone was in airplane mode, only data that had previously been stored on it, and not any data available via the Internet, were accessible, and all voice, text, and phone services were disabled. *See* PSOAF-1 ¶¶ 33–36. As a result, the data that Evans extracted from the Phone was gathered solely from its internal storage, and at no time was the Phone used to access or extract data from an Internet-based account or server, including email servers. DSOF-1 ¶¶ 15–17; Evans Aff. ¶¶ 11–13.[3]

---

[3] While Loughnane attempts to dispute these assertions, *see* Resp. DSOF-1 ¶¶ 13, 15–17, the evidence on which he relies does not controvert them, as discussed further below, *see*

After extracting the data from the Phone's internal storage, Evans copied them to an independent hard drive that likewise had no connection to the Internet. DSOF-1 ¶ 14; Evans Aff. ¶ 10. The Phone remained in Evans's possession and control until January 30, 2017, when it was returned to an employee of ZRFM. DSOF-1 ¶¶ 17, 20; Evans Aff. ¶¶ 13, 16. Evans did not access or manipulate the contents of the data once they had been collected from the Phone. DSOF-1 ¶ 18; Evans Aff. ¶ 14.

On February 15, 2017, D4 generated an extraction report summarizing the data collected from the Phone. DSOF-1 ¶ 15; *see* ZRFM Defs. and D4's Ex. 6, Samsung SM-N900A Galaxy Note III Extraction Report, ECF No. 222-6. D4 then provided the report, as well as the copy of the data collected from the Phone's internal storage, to ZRFM's counsel, Hinshaw.[4] DSOF-1 ¶ 21; DSOF-2 ¶ 28; Evans Aff. ¶ 17.

## B. Procedural History

Loughnane's complaint brings two claims against all Defendants: (1) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; and (2) intrusion upon seclusion under Illinois law. *See* Am. Compl. ¶¶ 88–116, ECF No. 68. The Court previously denied Defendants' motions to dismiss the complaint. *See* 9/6/19 Mem. Op. and Order, ECF No. 105. Now before the Court are Defendants' motions for summary judgment. *See* ZFRM and D4 Defs. Mot. Summ. J. and Mem. Supp., ECF No. 221; Hinshaw Defs.' Mot. Summ. J., ECF No. 249.

---

Hinshaw Defs.' Ex. 9, Evans Dep. at 31:6–31:9, 35:9–36:20, 38:8–38:12, 60:1–62:13, 115:12–116:10, ECF No. 252-12. Thus, the assertions are deemed admitted. *See* L.R. 56.1(b)(3)(C).

[4] Three Defendants are attorneys and partners at Hinshaw: Matthew R. Henderson, Tom H. Luetkemeyer, and Thomas L. O'Carroll. HDSOF ¶ 4. Together with Hinshaw, the Court refers to them as "the Hinshaw Defendants."

## II.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forth with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must instead "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### III. <u>Analysis</u>

Defendants move for summary judgment on each of Loughnane's claims. The Court addresses each in turn.

### A. **Violation of the SCA (Count I)**

The SCA makes it unlawful to:

(1) intentionally access without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceed an authorization to access that facility;

and thereby obtain, alter, or prevent authorized access to a wire or electronic communication while it is in electronic storage in such system[.]

18 U.S.C. § 2701(a). The Act also provides a civil cause of action for any person "aggrieved by any violation of this [provision] in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind." *Id.* § 2707(a).

Defendants primarily argue that Loughnane cannot show a violation of § 2701, because an individual's smartphone or other personal computer does not fall within the ambit of the statute when only the data stored on its local storage drive is accessed, and the smartphone or computer is not used to access any data stored on an external Internet-based account or server. While the Seventh Circuit has yet to address this issue, nearly every court to have done so has agreed with this view. *See, e.g., Garcia v. City of Laredo*, 702 F.3d 788, 792–93 (5th Cir. 2012); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003), *cert. denied*, 538 U.S. 1051 (2003); *Int'l Bhd. of Elec. Workers, Local 134 v. Cunningham*, No. 12-cv-7487, 2013 WL 1828932, at *4 (N.D. Ill. Apr. 29, 2013); *Shefts v. Patrakis*, No. 10-cv-1104, 2013 WL 489610, at

6

\*4 (C.D. Ill. Feb. 8, 2013); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057–58 (N.D. Cal. 2012); *Freedom Banc Mortg. Servs., Inc. v. O'Harra,* No. 2:11–cv–01073, 2012 WL 3862209, at \*9 (S.D. Ohio Sept. 5, 2012); *Council on Am.–Islamic Rels. Action Network, Inc. v. Gaubatz,* 793 F. Supp. 2d 311, 335 (D.D.C. 2011); *Becker v. Toca*, No. CIV. A. 07-7202, 2008 WL 4443050, at \*4 (E.D. La. Sept. 26, 2008); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001). *But see Expert Janitorial, LLC v. Williams*, No. 09-cv-283, 2010 WL 908740, at \*5 (E.D. Tenn. Mar. 12, 2010) (finding to the contrary that access of data stored on a computer can implicate § 2701(a) after misreading *Becker* as support).

The reasoning in these cases is sound. It begins with the SCA's definitions of "electronic communication service" and "electronic storage." *See, e.g.*, *Garcia*, 702 F.3d at 792 (internal quotation marks omitted). The statute defines the former to mean "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). And it defines the latter to mean "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and . . . any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id*. § 2510(17).

Based on these definitions, courts have interpreted the SCA to target providers of wire or electronic communications services, "such as telephone companies, Internet or e-mail service providers, and bulletin board services." *Garcia*, 702 F.3d at 792;

7

*accord, e.g., Steiger*, 318 F.3d at 1049. By the same token, they have understood the term "electronic storage" to encompass "only the information that has been stored by an electronic communication service provider." *Garcia*, 702 F.3d at 792; *accord, e.g., Freedom Banc*, 2012 WL 3862209, at *9; *In re Doubleclick*, 154 F. Supp. 2d at 511. And, while the statute does not define the word "facility" as it appears in § 2701(a), courts have deduced that "the relevant 'facilities' the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Garcia*, 702 F.3d at 792 (quoting *Freedom Banc*, 2012 WL 3862209, at *9 (emphasis in *Garcia*)). As a result, "these courts agree that a 'home computer of an end user is not protected by the SCA.'" *Id.* at 793 (quoting Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1215 (2004)).

This reading of the statute makes sense. After all, a smartphone or other personal computer, in and of itself, does not provide the end-user "the ability to send or receive wire or electronic communications." *See* 18 U.S.C. § 2510(15). Instead, a smartphone or other personal computer merely *enables* the end-user to employ a wire or electronic communication service—whether a telephone, Internet, or other network service—which *in turn* provides "the ability to send or receive wire or electronic communications." *See id.*; *Garcia*, 702 F.3d at 792; *Freedom Banc*, 2012 WL 3862209, at *9. This reading also is consistent with the SCA's legislative history, which "deals only with facilities operated by electronic communication services such

8

as 'electronic bulletin boards' and 'computer mail facilit[ies],'" and "makes no mention of individual users' computers[.]" *Garcia*, 702 F.3d at 793 (quoting *In re Doubleclick*, 154 F. Supp. 2d at 512 (in turn quoting S. Rep. No. 99-541, at 36 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3590)).

Loughnane's retort helps to prove the Court's point. In his view, a smartphone is a "facility" within the meaning of the SCA because "[i]t is a piece of equipment that allows for access to electronic communication services, and in so doing, access to electronic communications." Pl.'s Resp. Opp'n ZRFM Defs. and D4's Mot. Summ. J. ("Pl.'s Resp.") at 6, ECF No. 257. This formulation lays bare that it is the electronic communication services themselves, and not the equipment on which those services may be used, that "provide[] . . . the ability to send or receive wire or electronic communications," *see* 18 U.S.C. § 2510(15), as well as the "facilit[ies] through which" such service "is provided," *see id.* § 2701(a)(1). And indeed, courts "have consistently concluded that an individual's personal computer does not provide an electronic communication service simply by virtue of enabling use of electronic communication services." *In re iPhone*, 844 F. Supp. 2d at 1058 (cleaned up)).

Furthermore, Loughnane's reliance on *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017), is misplaced. In *Brown*, the district court had found that the defendant violated the SCA by accessing his coworkers' emails without authorization. *Id.* at 1175. On appeal, he argued that the emails he accessed were not in "electronic storage" under § 2701(a) because they "had already been opened by their intended recipients"—a distinct issue that has generated a circuit split. *Id.* at

9

1175. After summarizing the split of authority, the court held that the defendant had waived this issue by failing to raise it below and declined to resolve it. *Id.* at 1176–77. What is more, the court noted in passing (since it was not concerned with this detail) that the emails in question were stored on the employer's "server," *see id.* at 1176, which is precisely the missing ingredient in this case.

Loughnane's remaining counterarguments are equally unpersuasive. He asserts that the Court's conclusion "renders the SCA a nullity." Resp. at 8. But it does no such thing. To the contrary, it simply recognizes that the statute's "carefully chosen" words contemplate only those electronic communications "'in the possession of [a network service] provider,'" not those stored on a user's personal computer. *See Garcia*, 702 F.3d at 793 (quoting Kerr, 72 Geo. Wash. L. Rev. at 1215 n.47).

Loughnane also posits that the Court's conclusion "leads to an absurd result" because Defendants could have violated the SCA by accessing the same personal data they could have accessed in internal storage through an Internet-based account or server. Resp. at 11. But it is not absurd to recognize that, in enacting the statute, Congress was particularly concerned about data stored in the hands of electronic service providers, and did not set out to protect data stored in a personal computer. Moreover, as courts have observed, Loughnane's own, "strained interpretation" of the term 'facility' leads to untenable results. *See In re iPhone*, 844 F. Supp. 2d at 1058 (cleaned up). For instance, another provision of the SCA "authorizes access to a 'facility' by a provider of an electronic communication service." *Id.* (citing 18 U.S.C. § 2701(c)(1)). Thus, if the Phone were a 'facility,' a service provider would be able to

grant others access to the Phone—an "odd" result to say the least. *See id.* Similarly, under Loughnane's logic, the developers of any application downloaded on the Phone "would . . . be free under § 2701(c)(2) to authorize disclosure of [any] communication" between the Phone and the application. *See id.*; *see also* 18 U.S.C. § 2701(c)(2). Instead, these provisions reinforce that the only reasonable interpretation of 'facility' means one "*operated by* electronic communication service providers and used to store and maintain electronic storage." *See Garcia*, 702 F.3d at 792 (cleaned up).

Accordingly, the Court joins the overwhelming majority of its sister courts in recognizing that § 2701(a) "is not triggered when a defendant merely accesses a physical . . . computer and limits his access to [data] stored on the computer's local hard drive or other physical media." *Council on Am.-Islamic Rels.*, 793 F. Supp. 2d at 335 (citing *Steiger*, 318 F.3d at 1049). And here, because Evans switched the Phone into airplane mode during the extraction process, thereby disabling its connection to all network services, Defendants' access was limited to the data contained in the Phone's internal storage—*i.e.*, its local drive. DSOF-1 ¶¶ 15, 17. Loughnane fails to create a genuine dispute of material fact on this score because the testimony to which he points is not inconsistent with Evans's assertions that the Phone was in airplane mode throughout the extraction process, and that he never used the Phone to access or extract data from any other location. *Compare* Evans Aff. ¶¶ 9, 11–13, *and* Evans Dep. at 109:8–110:12, 111:2–111:11, *to* Evans Dep. at 31:6–31:9, 35:9–36:20, 38:8–38:12, 60:1–62:13, 115:12–116:10. As a result, Loughnane cannot show a violation of § 2701(a), and Defendants' motions are granted as to Count I.

11

**B.     Intrusion upon Seclusion (Count II)**

That leaves Loughnane's claim for intrusion upon seclusion under Illinois law. Given the Court's dismissal of Loughnane's only federal claim, the ZRFM Defendants and D4 invite the Court to relinquish supplemental jurisdiction over his state law claim under 28 U.S.C. § 1367(c)(3). *See, e.g.*, *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims . . . ." (citing 28 U.S.C. § 1367(c)(3)).

A district court's decision to relinquish supplemental jurisdiction where all federal claims have been dismissed prior to trial is indeed "the norm, not the exception." *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001) (cleaned up). And, while the Seventh Circuit has recognized a few "exceptions" to this "general rule," neither Loughnane nor the Hinshaw Defendants—whose motion asks the Court for a judgment on the merits on Count II—provide a reason to depart from it here.[5] *See Miller*, 273 F.3d at 732 (discussing "exceptions" to the general rule). Accordingly, Count II is dismissed without prejudice for lack of supplemental jurisdiction under § 1367(c)(3). *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that such a dismissal is without prejudice).

---

[5]     In fact, neither Loughnane nor the Hinshaw Defendants even responded to the ZRFM Defendants and D4's submission that the Court should relinquish supplemental jurisdiction over Count II in the event it disposes of Count I, and so they have waived any argument to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

12

## IV. <u>Conclusion</u>

For the foregoing reasons, the ZRFM Defendants and D4's motion for summary judgment is granted, and the Hinshaw Defendants' motion for summary judgment is granted in part and denied in part. Judgment will be entered in favor of Defendants on Count I, while Count II is dismissed without prejudice for lack of jurisdiction. This case is terminated.

**IT IS SO ORDERED.**         ENTERED   3/18/21

_____
**John Z. Lee
United States District Judge**